Preston Ray DICKEY, Appellant,

v.

UNITED STATES of America, Appellee.

Stanley Charles MOORE, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 25660, 25720.

United States Court of Appeals
Fifth Circuit.

Dec. 13, 1968.

John M. Callaway, Lake Worth, Fla., for Preston Ray Dickey.

Michael E. Jackson, Palm Beach, Fla., John M. Callaway, Lake Worth, Fla., for Stanley Charles Moore.

Aaron A. Foosaner, Asst. U. S. Atty., William A. Meadows, Jr., Miami, Fla., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and KEADY, District Judge.

PER CURIAM:

Dickey and Moore appeal their convictions, upon a jury verdict, for harboring, concealing, protecting or assisting Charles Joseph Acquaotta, knowing him to be a deserter from the United States Navy, for the purpose of preventing his discovery and arrest, in violation of 18

U.S.C.A. § 1381.[1] The appellants contend that the District Court erred in failing to direct a verdict of acquittal because the evidence was insufficient to establish that Acquaotta was harbored or known to be a deserter and because it was necessary to prove that Acquaotta had been adjudicated a deserter by military authorities. We disagree and affirm.

Acquaotta was absent from the Navy from April 27, 1966, until his return by the Federal Bureau of Investigation on September 9, 1966, a period of 136 days or four and one-half months. During this period Dickey and Moore lived in the same motel with Acquaotta and saw him frequently. Dickey admitted that he gave money to Acquaotta weekly, gave him food, and provided the motel room for Acquaotta. Both Dickey and Moore were advised during the F.B.I. investigation that Acquaotta was listed as a deserter and were warned not to violate the harboring statute, yet when Moore noticed F.B.I. surveillance of the motel he went to a nearby gasoline station, accompanied by a "vicious type" Doberman pinscher dog to discourage interference by federal agents, and telephoned a warning to Acquaotta. During his absence Acquaotta dyed his hair, grew a mustache and lived at the motel under an assumed name with a woman not his wife.

There is abundant evidence from which the jury could find that appellants harbored and assisted Acquaotta, and as to Dickey it is conceded on appeal. See Beauchamp v. United States, 6 Cir., 1946, 154 F.2d 413. Although Acquaotta and appellants testified that Acquaotta did not intend to remain away from the Navy permanently but only long enough to be discharged because of continued absence, the evidence was also sufficient for the jury to find that Acquaotta had no such intent but rather intended to remain away permanently and hence was a deserter.[2] Mancuso v. United States, 6 Cir. 1947, 162 F.2d 772. From the length of Acquaotta's absence, the conduct both of Acquaotta and appellants, and the knowledge of appellants that Acquaotta was a listed deserter, the jury objectively could determine that appellants knew Acquaotta to be a deserter during the time they harbored him. Added to this were the warnings from federal agents. Cases such as Haley v. United States, 9 Cir. 1954, 215 F.2d 778, and Firpo v. United States, 2 Cir. 1919, 261 F. 850, are clearly inapposite.

The appellants' major contention, that because Acquaotta had not been adjudicated a deserter they could not be convicted of harboring a deserter under the common law principle that one cannot be convicted as an accessory to a crime until the crime has been established, was fully discussed in Beauchamp v. United States, supra, 154 F.2d at 415–416. Suffice it to say that the argument is without merit because appellants were not tried as accessories but were

---

1. Both appellants were indicted, arraigned, tried and convicted together. Because they were sentenced separately their appeals were filed and numbered separately, although upon consent of counsel both appeals were heard together.

2. Article 85(a) of the Uniform Code of Military Justice, 10 U.S.C.A. § 885(a), provides that:

(a) Any member of the armed forces who—

(1) without authority goes or remains absent from his unit, organization, or place of duty with intent to remain away therefrom permanently;

(2) quits his unit, organization, or place of duty with intent to avoid hazardous duty or to shirk important service; or

(3) without being regularly separated from one of the armed forces enlists or accepts an appointment in the same or another one of the armed forces without fully disclosing the fact that he has not been regularly separated, or enters any foreign armed service except when authorized by the United States;

is guilty of desertion.

tried under a specific federal statute, there being no common law offenses against the United States. Clearly, there was sufficient evidence to establish Acquaotta as a deserter.

Affirmed.